IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LISA MCNEELY, et al.,

    Plaintiffs,

v.                 CIVIL ACTION NO.  2:13-cv-25114

WELLS FARGO BANK, N.A., et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Nationstar Mortgage, LLC ("Nationstar") and Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion for Judgment on the Pleadings [Docket 15]. For the reasons discussed below, the motion is **GRANTED in part and DENIED in part**.

**I.  Background**

In November 2006, the plaintiffs, Lisa and Michael McNeely, purchased a home using two home-secured mortgages, each governed by a Deed of Trust and held by Defendant Wells Fargo. (Compl. [Docket 1-2], ¶ 5). The plaintiffs divorced in November 2011, and Mr. McNeely was awarded the home and responsibility for the mortgage payments. (*Id.* ¶ 6). When Mr. McNeely's coal truck business went bankrupt in or around September 2012, Mr. McNeely contacted Defendant Nationstar, the servicer of the mortgages, seeking assistance with making his mortgage payments. (*Id.* ¶ 7(a)). Nationstar directed Mr. McNeely to submit certain information and to complete forms for a loan modification. (*Id.* ¶ 7(b)). Mr. McNeely submitted the requested documents to Nationstar, and Nationstar assured Mr. McNeely that it had all the necessary information to review Mr. McNeely's application for a loan modification. (*Id.* ¶ 7(b)–(c)).

Over the next several months, Mr. McNeely contacted Nationstar several times to check the status of his loan modification. (*Id.* ¶ 9(a)–(e)). On each occasion, Nationstar requested Mr. McNeely to submit documents, and Mr. McNeely would explain that he had already submitted the requested documents. (*Id.*). Nationstar would then reply that it found the documents and that it would finish the modification review within a few weeks. (*Id.*). Eventually, Nationstar told Mr. McNeely that he had to reapply for a loan modification because six months had passed since the loan application process was initiated. (*Id.* ¶ 10(e)). Nationstar ultimately referred Mr. McNeely's home to foreclosure. (*Id.* ¶ 11).

On August 30, 2013, the plaintiffs filed suit in state court against Nationstar and Wells Fargo (collectively, "defendants"). The plaintiffs allege five causes of action in their Complaint: illegal debt collection in violation of West Virginia Code §§ 46A-2-127 and -128 (Count I); negligence (Count II); assessing or threatening to assess illegal fees in violation of West Virginia Code §§ 46A-2-127(g), -115, and -128 (Count III); failure to credit payments, in violation of West Virginia Code § 46A-2-115 (Count IV); and breach of contract (Count V). (Compl. [Docket 1-2]). The defendants removed the action to this court on October 10, 2013. (Notice of Removal [Docket 1]). They now move for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c) and 12(h)(2)(B) on the basis that the plaintiffs have failed to state a legally cognizable claim upon which relief may be granted.

**II.    Legal Standard**

I consider a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). A Rule 12(b)(6) motion to dismiss tests the legal

2

sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 instructs that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has explained that this standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the plaintiff must provide "more than labels and conclusions" to satisfy the requirements of Rule 8, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual content must "nudge[ the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Failure to do so results in dismissal. *Id.* (dismissing the complaint because the plaintiffs failed to state a plausible claim against the defendant).

### III. Discussion

The defendants contend that the plaintiffs have failed these pleading requirements for each cause of action alleged in the Complaint. In the defendants' view, the plaintiffs' Complaint lacks sufficient factual content that would allow this court to draw a reasonable inference "that Nationstar had a duty to modify Plaintiffs' loans, that it tried to collect illegal fees, or that it failed

3

to properly credit Plaintiffs' payments." (Defs.' Mem. in Supp. of Their Mot. for J. on the Pleadings ("Defs.' Mem. in Supp.") [Docket 16], at 5–6). I address each cause of action in turn.

### A. Count I – Illegal Debt Collection

The plaintiffs first allege that Defendant Nationstar violated various provisions of the West Virginia Consumer Credit Protection Act ("WVCCPA"), including West Virginia Code § 46A-2-127 and § 46A-2-128, by assuring Mr. McNeely that it had all the necessary information for reviewing his loan modification but then repeatedly asking Mr. McNeely to resubmit certain documents when he would call for an update on his loan modification. (*See* Compl. [Docket 1-2], ¶¶ 9(a)–(e)). Section 46A-2-127 prohibits debt collectors from using "any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." W. Va. Code § 46A-2-127 (2014). Proscribed conduct includes "[a]ny false representation that the debt collector has in his possession information or something of value for the consumer that is made to solicit or discover information about the consumer." *Id.* § 46A-2-127(b). Section 46A-2-128 provides that "[n]o debt collector may use unfair or unconscionable means to collect or attempt to collect any claim." *Id.* § 46A-2-128.

In moving to dismiss this claim, the defendants begin by arguing that Nationstar's request for additional documents from Mr. McNeely to process his loan modification does not fall under the purview of §§ 46A-2-127 and -128. Specifically, the defendants assert that Nationstar's handful of discussions with Mr. McNeely about his loan modification does not constitute an "attempt to collect claims," and consequently, these consumer protection laws do not apply. In support of this position, the defendants cite *Spoor v. PHH Mortgage Corporation*, which held that merely "considering [a borrower's] request" for a loan modification did not create a cognizable

4

claim under § 46A-2-127. No. 5:10-cv-42, 2011 WL 883666, at *7 (N.D. W. Va. Mar. 11, 2011). In reaching this conclusion, the court noted that the WVCCPA defines "debt collection" as "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." *Id.* (quoting W. Va. Code § 46A-2-122(c)). The court reasoned that because "no payment is received in connection with simply considering a loan modification," the defendant's conduct did not constitute debt collection, and so the borrower could not pursue a WVCCPA claim. *Id.*

The plaintiffs challenge *Spoor*'s relevance to this matter. In *Spoor*, the plaintiff limited her claim under § 46A-2-127 to the wrongful collection of payments when "entering into a modification of a mortgage loan." *Id.* at *6. She did not allege wrongful collection of information. *Id.* at *7 ("The plaintiff contends that [the lender's] evaluation of consumers for hardship assistance results in the collection of debt."). Consequently, the *Spoor* court did not consider the issue presented in this case, which is whether a lender's improper collection of a borrower's information can yield a WVCCPA claim when no payments have been exchanged between the parties. To aid the court in answering this question, the plaintiffs point to cases from this district that have found §§ 46A-2-127 and -128 applicable to situations similar to the present matter.

In *Koontz v. Wells Fargo, N.A.*, for example, the plaintiff alleged that the defendant–lender made misrepresentations when collecting information from the plaintiff to process her loan modification request. No. 2:10-cv-00864, 2011 WL 1297519, at *6 (S.D. W. Va. Mar. 31, 2011). The *Koontz* court concluded that § 46A-2-127 applied to the loan modification dispute because the provision concerns "both misrepresentations made in collecting a debt *and* misrepresentations made when obtaining information on a customer." *Id.* (emphasis added). This conclusion

5

corresponds with the plain language of the statute, which expressly protects against improper attempts to "obtain information concerning customers," in addition to attempts to collect a debt. § 46A-2-127. *Koontz*'s reasoning has been observed in several other cases, including one of my own. *See, e.g.*, *McFarland v. Wells Fargo Bank, N.A.*, __ F. Supp. 2d __, 2014 WL 1805480, at *11 (S.D. W. Va. 2014) (Goodwin, J.) (finding Wells Fargo's misrepresentation that it would approve the plaintiff's loan modification request, and then failing to do so, adequately stated a claim under §§ 46A-2-127 and -128); *Petty v. Countrywide Home Loans, Inc.*, No. 3:12-6677, 2013 WL 1837932, at *13 (S.D. W. Va. May 1, 2013) (concluding that alleged misrepresentations in the collection of the plaintiffs' information through the modification process fall under § 46A-2-127); *Ranson v. Bank of Am., N.A.*, No. 3:12-5616, 2013 WL 1077093, at *9 (S.D. W. Va. Mar. 14, 2013) ("[A]llegations that a financial institution misrepresented to the borrower that it would reconsider a loan modification and, thereby, obtained additional financial information from the borrower, are sufficient to state a claim."). This reading of the statute also comports with the broad purposes of the WVCCPA, which "represents a comprehensive attempt on the part of the Legislature to extend protection to the consumers and persons who obtain credit in this State and who obviously constitute the vast majority of our adult citizens." *Harless v. First Nat'l Bank in Fairmont*, 246 S.E.2d 270, 275–76 (W. Va. 1978). Given the language of § 46A-2-127 and this district's uniform interpretation of that language, I find that § 46A-2-127 is not limited to debt collection but also extends to information collection. Accordingly, the plaintiffs' allegations of fraudulent, deceptive, or misleading conduct in Nationstar's collection of their information fits within the purview of §§ 46A-2-127 and -128.

6

Nevertheless, I cannot conclude that the plaintiffs' Complaint establishes sufficient facts to withstand the defendants' motion to dismiss. To satisfy the pleading requirements of Rule 8, a plaintiff must allege the conduct that § 46A-2-127 prohibits, that is, "fraudulent, deceptive or misleading representation." *See* Fed. R. Civ. P. 8 (requiring pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). In *Koontz*, for example, the plaintiff alleged that the defendant "misrepresented that it was providing her with a loan modification in order to collect additional money from Plaintiff through a trial modification" and that the defendant "misrepresented that [the plaintiff] was being considered for a loan modification." *Koontz*, 2011 WL 2197519, at *6–7. Similarly, in *McFarland* and *Ransom*, the plaintiff asserted that the defendant made misleading assurances that the plaintiff qualified for loan modification. *See McFarland*, __ F. Supp. 2d, at *11 (discussing the plaintiff's factual allegations of misrepresentation by the defendant regarding loan modification); *Ranson*, 2013 WL 1077093, at *9 (same). Finally, the plaintiffs in *Petty* supported their claim under the WVCCPA by contending that the defendant sought foreclosure after assuring the plaintiffs that it would not do so. *Petty*, 2013 WL 1837932, at *13. In the words of the defendants at bar, each of the above cases involves "loan servicers' fraudulent or deceptive misrepresentations to plaintiffs that a loan modification would be granted and, in some cases, additional misrepresentations that plaintiffs had to stop making their payments not to interfere with a loan modification process." (Defs.' Reply in Supp. of Their Mot. for J. on the Pleadings ("Reply") [Docket 18], at 2).

The instant Complaint, however, does not contain similar allegations. Nothing in the Complaint indicates that the defendants made promises about the plaintiffs' loan modification request or about the possibility of a foreclosure. Instead, the Complaint simply alleges that in

7

reviewing the plaintiffs' loan modification request, the defendants' could not locate certain documents and asked the plaintiffs to resubmit the information. (*See* Compl. [Docket 1-2], ¶ 9(a) ("On multiple occasions between September 2012 and February 2013, Defendant Nationstar contacted Plaintiff Michael McNeely and requested that he submit documents that he already submitted."). Although the plaintiffs' Complaint uses speculative language and allusive punctuation in an effort to suggest that the defendants lied about being unable to find the loan modification documents, the plaintiffs have alleged no facts to nudge this accusation from merely possible to probable.[1]

Assuming the truth of the factual allegations in the Complaint, as I must, I see no facts to support a claim of "fraudulent, deceptive or misleading representation[s]" in an attempt to "obtain information concerning consumers," which is required to maintain a cause of action under § 46A-2-127. W. Va. Code § 46A-2-127. Moreover, repeated requests for information with the purpose of processing a loan modification—absent fraud or deception—does not constitute unfair or unconscionable debt collection giving rise to a claim under § 46A-2-128. *See id.* § 46A-2-128 ("No debt collector should use unfair or unconscionable means to collect or attempt to collect any claim."). For these reasons, I **FIND** that the plaintiffs have failed to state a claim upon which relief can be granted under §§ 46A-2-127 and -128, and as a result, I **GRANT** the defendants' motion to dismiss with respect to Count I. Count I is thereby **DISMISSED**.

---

[1] For instance, the plaintiffs place quotation marks around the word "missing," presumably in an effort to suggest that Nationstar misrepresented to Mr. McNeely that it could not locate his information. (Compl. [Docket 1-2], ¶ 9(b) ("When Plaintiff Michael McNeely would inform Nationstar that he had already submitted the requested information, Defendant Nationstar's agent would 'check on it' and usually locate the 'missing' document.")). This glib use of punctuation in an attempt to imply deceit is not enough to "raise a right to relieve above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

### B. Count II – Negligence

The plaintiffs next bring a negligence claim against Defendant Nationstar, alleging that Nationstar owed the plaintiffs "a duty to act with reasonable care in the servicing of [the] Plaintiffs' account," (Compl. [Docket 1-2], ¶ 20), and it breached that duty over the course of reviewing the plaintiffs' loan modification request (*id.* ¶ 21). Specifically, the plaintiffs contend that Nationstar breached its duty

> when it refused to reasonably and in good faith evaluate Plaintiff for a loan modification after promising to do so, gave Plaintiff conflicting information regarding the promised modification, required Plaintiff to resubmit documents over and over again, told Plaintiff documents were missing from his file when, in fact, they were not, told Plaintiff he had to restart the entire process because six months had elapsed and failed to otherwise appropriately service Plaintiff's loan.

(*Id.*).

In moving to dismiss this claim, the defendants raise West Virginia's economic-loss doctrine, which prevents a plaintiff from bringing a negligence action for an alleged breach of contract absent some "special relationship" between the parties that creates a duty separate from the contract. Because the plaintiffs have not pleaded facts to indicate such a relationship, the defendants implore this court to dismiss the plaintiffs' negligence claim under the economic-loss doctrine. The plaintiffs, though accepting this doctrine, dispute its application to their case. Even if the economic-loss doctrine prevents them from bringing a negligence claim against a party to the Deeds of Trust, such as Wells Fargo, the plaintiffs argue that they can pursue a negligence claim against Nationstar, the non-party loan servicer. (*See* Pls.' Resp. in Opp. to Defs.' Mot. for J. on the Pleadings ("Resp.") [Docket 17], at 7 (arguing that because Nationstar is not a party to the Deeds

9

of Trust, the plaintiffs can pursue tort remedies against it)). Therefore, in the plaintiffs' view, the economic-loss doctrine does not bar their claim for negligence against Nationstar.[2]

The parties have correctly recognized West Virginia's economic-loss doctrine, which provides that absent a "special relationship" between the parties, a plaintiff "cannot maintain an action in tort for an alleged breach of a contractual duty." *Lockhart v. Airco Heating & Cooling, Inc.*, 567 S.E.2d 619, 624 (W. Va. 2002). This doctrine "essentially forecloses a plaintiff from obtaining relief through tort law when that party's only damage has come from a contractual relationship." *Ballard v. Fifth Third Bank*, No. 2:10-cv-00817, 2010 WL 3359572, at *2 (S.D. W. Va. Aug. 23, 2010). Put simply, to pursue a tort action against a party to a contract, a plaintiff must demonstrate "the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." *Id.*

Guided by the economic-loss doctrine, the court must first determine whether a contractual relationship exists between Nationstar and the plaintiffs. If so, then West Virginia law precludes the plaintiffs from bringing a negligence claim against Nationstar unless the claim relates to special obligations existing outside of the contract. *See, e.g.*, *Ranson v. Bank of Am., N.A.*, No. 3:12-5616, 2013 WL 1077093, at *6 (S.D. W. Va. Mar. 14, 2013) (barring the plaintiff's negligence claim because he "failed to allege any positive legal duty beyond Defendant's purported contractual obligations"). The plaintiffs have made inconsistent allegations as to whether the Deeds of Trust apply to Nationstar. As an initial matter, by alleging a breach of contract claim against Nationstar, the plaintiffs necessarily presume the existence of a contract

---

[2] Although the defendants move for dismissal of the negligence claim brought against both Wells Fargo and Nationstar, it is clear from the Complaint that the plaintiffs have not asserted a negligence claim against Defendant Wells Fargo. (*See* Compl. [Docket 1-2], ¶¶ 20–23 (alleging negligence against "Defendant Nationstar" in particular)). Thus, this court analyzes the claim of negligence only as it relates to Nationstar.

10

with the loan servicer. (Compl. [Docket 1-2], ¶¶ 29–34). Indeed, the Complaint asserts that "Defendant Nationstar is bound by the contract as the holder's servicing agent." (*Id.* ¶ 29). But, to my confusion, the plaintiffs' Response to the Defendants' Motion for Judgment on the Pleadings states the opposite, purporting that Nationstar "is not a party to the contract" in an attempt to establish a valid claim of negligence. (Resp. [Docket 17], at 8).

To solve this discrepancy, I refer to the Fourth Circuit's directives for reviewing a motion to dismiss. At the motion-to-dismiss stage of litigation, a court cannot consider allegations that exist beyond the complaint and the documents attached to or incorporated into the complaint. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (emphasizing that going beyond these documents on a Rule 12(b)(6) motion converts the motion into one for summary judgment). This limitation applies not only to unincorporated materials but also to statements made by counsel that raise new facts beyond those set forth in the pleadings. *Id.* at 449 ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion."). Here, the plaintiffs' Response proposes a new fact that the plaintiffs did not allege in their Complaint, namely, that Nationstar was not subject to the Deeds of Trust. (Resp. [Docket 17], at 8). Accordingly, I am obligated to disregard the allegations in the Response and look only to the Complaint, which states that Nationstar "is bound by the contract as the holder's servicing agent." (Compl. [Docket 1-2], ¶ 29). If Nationstar is bound by the contract, then, under the economic-loss doctrine, the plaintiffs cannot assert a claim of negligence unless, as explained above, it has a special relationship with Nationstar.

To be clear, even if the court assumes that Nationstar was not party to the Deeds of Trust, as the plaintiffs suggest in their Response, the negligence claim still cannot survive without this

11

special relationship. This conclusion stems from the WVCCPA. While a plaintiff may pursue common law claims alongside claims under the WVCCPA, *see* W. Va. Code § 46A-2-101(3) ("Nothing contained in this section shall be construed as affecting any buyer's or lessee's right of action, claim or defense which is otherwise provided for [under] common law."), the West Virginia Supreme Court of Appeals has held that common law actions may be maintained only to the extent that they exist "separate from the Act." *Casillas v. Tuscarora Land Co.*, 412 S.E.2d 792, 795 (W. Va. 1991). Here, the plaintiffs' negligence claims do not differ in substance from their WVCCPA claims. That is, both Counts I and II concern the defendants' alleged wrongful handling of the plaintiffs' loan modification. Because the Complaint does not allege duties that exist apart from the WVCCPA, the plaintiffs' common law negligence claim must fail, absent the requisite special relationship. *See O'Brien v. Quicken Loans, Inc.*, Nos. 2:12-cv-5138, 2:12-cv-5262, 2013 WL 2319248, at *10 (S.D. W. Va. May 28, 2013) ("O'Brien has alleged no duty apart from the WVCCPA. Claims stemming from the violation of those duties do not sound in tort . . . .").

Having concluded that the plaintiffs' negligence claim is confined by the Deeds of Trust and the WVCCPA, the plaintiffs can only avoid dismissal if they have alleged the existence of a special relationship with Nationstar that exists outside of the Deeds of Trust and the WVCCPA. In the lender–borrower context, a special relationship exists if the loan servicer has "perform[ed] services not normally provided" to a borrower. *Warden v. PHH Mortg. Corp.*, No. 3:10-cv-75, 2010 WL 3720128, at *9 (N.D. W. Va. Sept. 16, 2010). Here, Nationstar assisted the plaintiffs in applying for a loan modification, conducted the loan modification review process, and handled the plaintiffs' mortgage payments. (*See* Compl. [Docket 1-2], ¶¶ 7–13). These are services normally provided to a borrower by a loan servicer. *See Warden*, 2010 WL 3720128, at *9 (concluding that

by accepting the plaintiffs' monthly mortgage payments, discussing eligibility for a loan modification, and foreclosing on the property, the defendant–servicer provided services "normally provided" for a borrower); *see also Koontz v. Wells Fargo, N.A.*, No. 2:10-cv-00864, 2011 WL 1297519, at *11 (S.D. W. Va. Mar. 31, 2011) (finding that accepting monthly mortgage payments, engaging in temporary loan modification, denying a permanent loan modification, and ultimately foreclosing on the property "are actions and services normally transpiring between a loan servicer and a borrower"). Because the relationship between Nationstar and the plaintiffs consists of services customarily provided by a servicer to a borrower, I find that the plaintiffs have failed to plead a special relationship that would create an independent duty sounding in tort. *See id.* (dismissing the negligence claim because the plaintiffs failed to plead a special relationship beyond that expected between a loan servicer and a borrower).

Without a special relationship with Nationstar between beyond that created by the Deeds of Trust and the WVCCPA, the plaintiffs' negligence claim has no independent basis. Accordingly, I **GRANT** the defendants' motion on this point and **DISMISS** Count II of the Complaint.

### C.  Count III – Illegal Fees

Returning to the WVCCPA, the plaintiffs next allege that "in the course of attempting to collect from Plaintiffs, [the defendants] assessed and/or threatened to assess attorney's fees and other default fees to Plaintiffs' account when the same is not authorized by the parties' agreement or law, in violation of West Virginia Code §§ 46A-2-127(g), -115, and -128." (Compl. [Docket 1-2], ¶ 25). Section § 46A-2-127(g) prohibits debt collectors from making "[a]ny representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may

13

not legally be added to the existing obligation." W. Va. Code § 46A-2-127(g).[3] Both parties agree that the existing obligation between the parties, namely, the Deeds of Trust, prevents the defendants from assessing attorney's fees against the plaintiff. (*See* Compl. [Docket 1-2], ¶ 30; Resp. [Docket 17], at 9; Defs.' Mem. in Supp. [Docket 16], at 4).

Regardless, the defendants seek dismissal of this claim because, in their view, the plaintiffs have not pleaded adequate facts such that the court can infer improper fee assessment. For instance, the plaintiffs have not provided a year in which such fees were assessed; a list of which fees were "illegal"; or an approximate amount for the allegedly illegal fees. (Defs.' Mem. in Supp. [Docket 16], at 8). Furthermore, the plaintiffs have not pointed to any document that might contain this information, such as a monthly fee statement. (*Id.*). The plaintiffs respond that including such information in their Complaint would go beyond the level of specificity required by Rule 8. Moreover, the plaintiffs contend that their Complaint "provides Defendants with sufficient information to evaluate its own accounting of Plaintiffs' loan to determine when attorney's fees or other illegal fees were assessed, and for how much," especially considering that the parties have already exchanged discovery. (Resp. [Docket 17], at 10).

This court has previously dealt with a similar issue. In *Coleman v. J.P. Morgan Chase Bank, N.A.*, borrowers claimed that a bank assessed illegal charges to their account in violation of the WVCCPA. No. 3:14-0183, 2014 WL 1871726, at *7–8 (S.D. W. Va. May 8, 2014). The bank sought to dismiss the claim on the pleadings because the plaintiffs stated neither when the illegal

---

[3] West Virginia Code §§ 46A-2-115 and 46A-2-128 supplement this provision, stating, respectively, that the agreement between the parties "may not provide for charges as a result of default by the consumer other than those authorized by this chapter," W. Va. Code § 46A-2-115(a), and that "[t]he collection of or the attempt to collect any . . . fee or expense incidental to the principal obligation" is prohibited unless "expressly authorized by the agreement creating the obligation and by statute." *Id.* § 46A-2-128(d).

14

fees were assessed nor how much they were charged. *Id*. at *8. The court expressed discomfort with the plaintiffs' lack of specificity and directed the plaintiffs to amend their complaint and set out their allegations in greater detail. *Id*. at *9.

I am similarly troubled by the lack of specificity in the present pleadings. Although the plaintiffs supposedly have documentation of the defendants' illegal fee assessments, they provide little to no detail about the timing and amount of the allegedly unlawful fees. For this reason, I **GRANT** the defendants' motion on this point and **DISMISS** Count III of the Complaint.[4]

### D. Count IV – Failure to Credit Payments

In Count IV, the plaintiffs again turn to the WVCCPA, alleging that the defendants violated West Virginia Code § 46A-2-115(c) by "appl[ying] Plaintiffs' payments to escrow and other charges before applying payments to principal." (Compl. [Docket 1-2], ¶ 13). Section § 46A-2-115(c) provides that

> *[a]ll amounts paid to a creditor arising out of any consumer credit sale or consumer loan shall be credited upon receipt against payments due*: Provided, That amounts received and applied during a cure period will not result in a duty to provide a new notice of right to cure; and provided further that partial amounts received during the reinstatement period set forth in subsection (b) of this section do not create an automatic duty to reinstate and may be returned by the creditor. Default charges shall be accounted for separately; those set forth in subsection (b) arising during such a reinstatement period may be added to principal.

W. Va. Code § 46A-2-115(c) (emphasis added). In simple terms, this subsection "requires a lender of a consumer loan to credit any full or partial payments received from the borrower, subject to the exception that a lender may reject partial payments received after the foreclosure process has begun." *Kesling v. Countrywide Home Loans, Inc.*, No. 2:09-588, 2011 WL 227637, at *3 (S.D.

---

[4] Although the *Coleman* court provided specific directions to the plaintiffs on how to go about amending their complaint, I do not feel bound by this practice. It is the plaintiffs' job to push their claim to plausibility, not the court's.

W. Va. Jan. 24, 2011). Thus, allegations that a lender instructed a borrower to not make payments or that a lender returned payments to a borrower would constitute a plausible claim under § 46A-2-115(c). *See, e.g.*, *Petty v. Countrywide Home Loans, Inc.*, No. 3:12-6677, 2013 WL 1837932, at *13 (S.D. W. Va. May 1, 2013) (finding these allegation sufficient to state a plausible claim under § 46A-2-115(c)).

The defendants contend that this court should dismiss Count IV because "[n]owhere in the entire Complaint do Plaintiffs allege that Nationstar failed to credit their loan with the amounts paid upon their receipt." (Defs.' Mem. in Supp. [Docket 16], at 11). Rather, "[t]he only allegations concerning Plaintiffs' payments are that Nationstar allegedly applied them to interest, escrow, and other charges before applying them to a principal." (*Id.*). Because § 46A-2-115(c) does not "mandate an order in which [a borrower's] payments must be applied to outstanding amounts," the defendants maintain that the plaintiffs have failed to state a claim under Count IV. (*Id.*). In response, the plaintiffs point to the Deeds of Trust, which require the defendants to accept and apply payments in a specific order of priority, beginning with interest, followed by principal, and ending with escrow fees. (*See* Deed of Trust [Docket 15-1], ¶ 2). The plaintiffs allege that the defendants did not adhere to this prioritization and have therefore violated the WVCCPA.

I disagree. The plaintiffs' allegation under Count IV, while perhaps demonstrating a breach of the Deeds of Trust, does not constitute a violation of § 46A-2-115(c), which only directs a lender to accept payments from a borrower and to apply payments to the borrower's account. The WVCCPA does not set forth any prioritization schedule between the lender and borrower, leaving such details to contract. Lacking allegations that Nationstar refused to accept payments, the

16

Complaint fails to state a claim under § 46A-2-115(c). Accordingly, I **GRANT** the defendants' motion with respect to Count IV, and it is thereby **DISMISSED**.

### E. Count V – Breach of Contract[5]

Lastly, the plaintiffs allege that the defendants breached the Deeds of Trust by (1) charging attorney's fees to the plaintiffs, (Compl. [Docket 1-2], ¶ 30); (2) applying the mortgage payments in the improper order of priority, (*id.* ¶ 31); and (3) failing to act in good faith in performing the contract, (*id.* ¶ 32). A claim for breach of contract under West Virginia law requires "the existence of a valid, enforceable contract; that the plaintiff has performed under the contract; that the defendant has breached or violated its duties or obligations under the contract; and that the plaintiff has been injured as a result." *Petty v. Countrywide Home Loans, Inc.*, No. 3:12-6677, 2013 WL 1837932, at *9 (S.D. W. Va. May 1, 2013) (citations omitted). To survive a motion to dismiss, a plaintiff must allege, at a minimum, "the breach on which the plaintiffs found their action . . . [and] the facts and circumstances which entitle them to damages." *Id.* (citations omitted).

In moving to dismiss this claim, the defendants contend that the Deeds of Trust require the plaintiffs to provide Nationstar with written notice and opportunity to cure prior to commencing a judicial action against it. The notice-and-cure provision of the Deeds of Trust states that

> [n]either Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, his Security Instrument, *until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.*

---

[5] In their Complaint, the plaintiffs mistakenly label the breach of contract claim, the fifth cause of action listed, as "Count IV." (Compl. [Docket 1-2], ¶¶ 28–34). To ensure clarity, I refer to the breach of contract claim as Count V.

17

(Deed of Trust [Docket 15-1], ¶ 20; Deed of Trust [Docket 15-2], ¶ 20 (emphasis added)).[6] The plaintiffs failed to provide the required notice prior to initiating this lawsuit, and as a result, the defendants assert that the plaintiffs' breach of contract claim is barred as premature. The plaintiffs, on the other hand, claim that they satisfied the notice-and-cure provision by sending a certified letter to Nationstar on April 25, 2013, and requesting "a full accounting." (Resp. [Docket 17], at 11–12). In addition, the plaintiffs gave the defendants four months to take corrective action prior to filing the instant suit on August 30, 2013. (*Id.* at 12). Accordingly, the plaintiffs assert that they satisfied the notice requirements set forth in the Deeds of Trust.

I agree, and observing that the defendants did not dispute the letter in their Reply, (*see* Reply [Docket 18], at 8–9), it appears that the defendants agree as well. Because the court must draw "all reasonable factual inferences from [the] facts in the plaintiff[s'] favor" in reviewing this motion, *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), I conclude that the plaintiffs provided proper notice to the defendants before bringing this lawsuit, as required under the Deeds of Trust. Thus, the defendants' reliance on the notice-and-cure provision has no merit.

The defendants argue that the court should nevertheless dismiss Count V because the plaintiffs failed to plead sufficient facts to support it. As explained above, to preserve a breach of contract claim, the plaintiffs' must allege the breach on which they base their claim and the facts demonstrating entitlement to damages. *Petty*, 2013 WL 1837932, at *9. The plaintiffs have satisfied these requirements. First, the plaintiffs state specific provisions from the Deeds of Trust that the defendants allegedly breached. (*See* Compl. [Docket 1-2], ¶¶ 30–31 (alleging that the

---

[6] Because the Deeds of Trust were relied upon by the plaintiffs in their Complaint, the court may consider them in ruling on the present motion. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.").

defendants breached ¶ 25 and ¶ 2 in the Deeds of Trust)). Second, the plaintiffs stated facts supporting these breaches—the improper charging of attorney's fees and the improper prioritization of mortgage payments. (*Id.*). These allegations satisfactorily state a claim for breach of contract.[7]

### IV. Conclusion

For the reasons discussed above, the defendants' Motion for Judgment on the Pleadings [Docket 15] is **GRANTED in part** and **DENED in part**. Accordingly, Counts I, II, III, and IV are **DISMISSED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 10, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[7] From the Complaint, it appears that the plaintiffs bring a breach of contract claim against both defendants. (Compl. [Docket 1-2], ¶¶ 30–34 (using the plural form of "defendant" in alleging Count V)). In their Response, however, the plaintiffs indicate that their breach of contract claim "runs" against Defendant Wells Fargo alone. (Resp. [Docket 17], at 12 n.3). Applying the same procedural rule that this court employed for the negligence claim, *see supra* at 11, I do not consider counsel statements proffered outside of the pleadings and therefore assume that the plaintiffs intended to bring the breach of contract claim against both defendants, as specified in the Complaint.