IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LISA MCNEELY, et al.,

    Plaintiffs,

v.             CIVIL ACTION NO. 2:13-cv-25114

WELLS FARGO BANK, N.A., et al.,

    Defendants.

**MEMORANDUM OPINION & ORDER**

  Pending before the court is defendants' Motion for Summary Judgment [Docket 48]. The Motion, having been fully briefed by the parties, is now ripe for review. Based on the reasoning set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

 **I.**  **Background**

  In November 2006, the plaintiffs, Lisa and Michael McNeely, purchased a home using two home-secured mortgages, each governed by a Deed of Trust and held by Defendant Wells Fargo. (Am. Compl. [Docket 37] ¶¶ 3, 5). Ms. McNeely is the borrower listed on both of the mortgages. (*See* Exs. A & B, Adjustable Rate Note & Deed of Trust ("First Loan") [Dockets 48-1, 48-2]; Exs. E & F, Note & Deed of Trust ("Second Loan") [Dockets 48-5, 48-6]). Defendant Nationstar Mortgage, LLC, is the servicer of the mortgages and charged various fees to Ms. McNeely's accounts throughout the servicing of her loans. (Am. Compl. [Docket 37] ¶¶ 14–17). Additionally, Nationstar and Ms. McNeely agreed to modify the interest rate on the First Loan three times between November 2008 and June 2010. (*Id.* ¶ 7).

When the plaintiffs divorced in November 2011, Mr. McNeely was awarded the home and responsibility for the mortgage payments. (*Id.* ¶ 6). Mr. McNeely contacted Nationstar for assistance with making the mortgage payments after his coal truck business went bankrupt in September 2012. (*Id.* ¶ 8(a)). Nationstar suggested that Mr. McNeely apply for a loan modification and sent him a loan modification package. (*Id.* ¶ 8(b); *see also* Ex. J, Letter from Nationstar to Lisa McNeely (Sept. 8, 2012) [Docket 48-10] (loan modification package)). Mr. McNeely submitted the required documentation to Nationstar on September 10, 2012. (Am. Compl. [Docket 37] ¶ 9). Two days later, Nationstar asked for supplementary forms to reflect Mr. McNeely's sources of income, including a tax release form, Form 4056-T. (Ex. L, Letter from Nationstar to Lisa McNeely (Sept. 12, 2012) [Docket 48-12] (requesting additional documents)). Mr. McNeely faxed the requested form on September 20, 2012. (Am. Compl. [Docket 37] ¶ 11(b)). Nationstar asked Mr. McNeely to submit the form again on September 27, 2012, because Ms. McNeely had not signed it. (*Id.* ¶ 11(c); *see also* Ex. K, Collection History Profile [Docket 48-11], at 113).

On November 6, 2012, Nationstar informed Mr. McNeely via telephone that it had all necessary documents and would "evaluate his request for loan modification in about a week." (Am. Compl. [Docket 37] ¶ 12(a)). Accordingly, Mr. McNeely checked in with Nationstar a week later but was told that a decision would not be made on his request for another three to four weeks. (*Id.* ¶ 12(b)). In December 2012, Nationstar asked Mr. McNeely for additional quarterly

profit and loss statements, further delaying the loan modification process. (*Id.* ¶ 12(d)).[1]

Eventually, Mr. McNeely's loan modification application expired. (*Id.* ¶ 12(e)).[2]

On August 30, 2013, the plaintiffs filed suit in state court against Nationstar and Wells Fargo (collectively, "defendants"), alleging that Nationstar's conduct in servicing the mortgage loans and loan modification request was in violation of West Virginia law and caused them to suffer "annoyance, inconvenience, and fear of loss of home." (*Id.* ¶ 18). The defendants removed the case to federal court on October 10, 2013, based on diversity jurisdiction. (Notice of Removal [Docket 1], at 2–8). Upon the defendants' Motion for Judgment on the Pleadings, I dismissed four of the five claims in the plaintiffs' original complaint, (Mem. Op. & Order [Docket 23]), and then allowed the plaintiffs' to amend pursuant to Federal Rule of Civil Procedure 15, (Mem. Op. & Order [Docket 35]). The plaintiffs' Amended Complaint, filed on April 2, 2015, states three causes of action: illegal debt collection in violation of West Virginia Code §§ 46A-2-127 and -128 (Count I); assessing or threatening to assess illegal fees in violation of West Virginia Code §§ 46A-2-127(g), -115, and -128 (Count II); and breach of contract (Count III). (Am. Compl. [Docket 37] ¶¶ 19–29). The defendants now move for summary judgment on each claim.

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the

---

[1] According to the Collection History Profile of Ms. McNeely's account, Nationstar requested additional profit and loss statements when Mr. McNeely notified Nationstar that he was "in the process of opening a restaurant," which would generate rent income. (Ex. K, Collection History Profile [Docket 48-11], at 856–57).

[2] Ms. McNeely was not involved in Mr. McNeely's attempt at loan modification. (Ex. C, Lisa McNeely Dep. [Docket 48-3], at 35:11–24 (testifying that she did not help or work with her ex-husband in trying to modify the loan in 2012)).

evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

### III. Discussion

The defendants assert four grounds for summary judgment: (1) Mr. McNeely lacks standing to bring these claims; (2) the claims are not supported by the facts; (3) no damages have been suffered as a result of the defendants' alleged conduct; and (4) the damages, if any, are barred by the defendants' right to recoupment. I address each argument in turn.

A. Standing

### 1. West Virginia Consumer Credit Protection Act (Counts I and II)

First, the defendants argue that Mr. McNeely lacks standing to bring Counts I and II, which arise under the West Virginia Consumer Credit Protection Act ("WVCCPA"), because the WVCCPA only provides for private suits by "consumers." In the defendants' view, Mr. McNeely, who is not a party to any loan agreement with Nationstar, is not a "consumer" as defined by the Act. The plaintiffs respond that WVCCPA §§ 46A-2-127 and -128 do not specifically require a claimant to be a consumer in order to bring suit, and in any event, Mr. McNeely fits within the definition of consumer set forth by § 46A-2-122(a).

As an initial matter, the plain language of the WVCCPA and its legislative history make clear that a plaintiff must be a consumer to bring a private cause of action under the Act. *See* W. Va. Code § 46A-5-101(1) (2006) ("If a creditor has violated the provisions of this chapter . . . *the consumer* has a cause of action to recover actual damages . . . ." (emphasis added)); *Vanderbilt Mortg. & Fin., Inc. v. Cole*, 740 S.E.2d 562, 568 (W. Va. 2013) ("The purpose of the [WVCCPA] is to protect *consumers* from unfair, illegal, and deceptive acts or practices by providing an avenue of relief *for consumers* who would otherwise have difficulty proving their case under a more traditional cause of action." (emphasis added) (quoting *Dunlap v. Friedman's, Inc.*, 582 S.E.2d 841, 846 (W. Va. 2003))).[3] The relevant question, therefore, is whether Mr. McNeely qualifies as a consumer under the Act.

---

[3] Contrary to the plaintiffs' argument, the omission of the word "consumer" from the specific provisions at issue does not lead to the conclusion that the scope of these provisions was intended to extend beyond that of the rest of the Act and into non-consumer transactions. *See, e.g.*, *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 1:09-cv-139, 2010 WL 3271965, at *8 (N.D. W. Va. Aug. 18, 2010) (holding that the WVCCPA, by its plain terms, "protects only those persons qualifying as consumers and dealing in consumer transactions," regardless of whether a particular provision of the Act includes the word "consumer"). Indeed, the plaintiffs' interpretation would contradict the plain terms of Article 2, which is entitled "Consumer Credit Protection." W. Va. Code. § 46A-2; *see also id.* § 46A-2, editor's notes ("The provisions of this article specifically apply to transactions which may properly be classified as 'consumer credit sales' . . . .").

5

The WVCCPA sets forth multiple definitions of the term "consumer." *Compare* W. Va. Code § 46A-1-102(12), *with id.* § 46A-2-122(a). Because the plaintiffs' claims arise under Article 2, I apply the Article 2 definition of the term: "'Consumer' means any natural person obligated or allegedly obligated to pay any debt." *Id.* Courts consider a person "allegedly obligated" to pay a debt when the creditor has "represented to [him] that [he is] personally liable on the debt." *Fabian v. Home Loan Ctr., Inc.*, No. 5:14-cv-42, 2014 WL 1648289, at *6 (N.D. W. Va. Apr. 24, 2014); *see also McGuire v. Jim Walter Homes, LLC*, No. 5:14-cv-14299, 2014 WL 5149725, at *7 (S.D. W. Va. Oct. 14, 2014) (holding that because the plaintiffs produced evidence that the creditor repeatedly called them seeking payment on their account, the plaintiffs were allegedly obligated to pay it); *Croye v. GreenPoint Mortg. Funding, Inc.*, 740 F. Supp. 2d 788, 797 (S.D. W. Va. 2010) ("[The creditor's] repeated efforts to collect payment from him suggest the existence of an alleged obligation of Mr. Croye to pay the loans.").

The defendants argue that Mr. McNeely is not obligated or allegedly obligated to pay the mortgage loans at issue because he has no creditor–borrower relationship with Nationstar or Wells Fargo. In response, the plaintiffs argue that Mr. McNeely is "allegedly obligated" to pay the mortgages because he has "introduced evidence that Defendant Nationstar treated him as if he were obligated on the debt." (Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. [Docket 50], at 11). Based on the evidence before me, I must disagree. The plaintiffs have offered no proof that Mr. McNeely is obligated, allegedly or otherwise, by Nationstar to make mortgage payments on the home. In fact, all evidence is to the contrary:

- Mr. McNeely did not sign and was not a party to either of the loans at issue, which were all signed by Ms. McNeely, (*see* First Loan [Dockets 48-1, 48-2]; Second Loan [Dockets 48-5, 48-6]);

6

- Mr. McNeely did not sign and was not party to the loan modification agreements entered into between Ms. McNeely and Nationstar, (*see* Ex. G, Declaration of Fay Janati, Exs. 3, 5, 7 [Docket 48-7] (copies of the loan modification agreements));

- All correspondence from Nationstar about the loans is addressed to Lisa McNeely, including the correspondence concerning Mr. McNeely's personal efforts to modify the First Loan, (*see, e.g.*, Ex. J, Letter from Nationstar to Lisa McNeely (Sept. 8, 2012) [Docket 48-10] (loan modification package)); and

- The forms submitted in Mr. McNeely's loan modification application had to be signed by the listed borrower, Ms. McNeely, (*see, e.g.*, Ex. D, Letter from Nationstar to Lisa McNeely (Sept. 27, 2012) [Docket 50-4] (requiring signature by "BORROWER")).

Furthermore, none of the evidence presented by the parties suggests that Nationstar treated Mr. McNeely as if he were personally obligated under the loan agreements by, for instance, directly soliciting him for payment.

Although Mr. McNeely's divorce agreement with Ms. McNeely required him to pay the mortgage, he did not enter into any subsequent agreement with Nationstar, such as a novation or assumption of duty, to reflect this obligation. (*See* Ex. D, Michael McNeely Dep. [Docket 48-4], at 18:10–12 (testifying that he did not "sign any other agreement with the lender obligating [him] to make payments")). In other words, Mr. McNeely's obligation to pay the mortgage was to his ex-wife, not to Nationstar. A marital obligation to pay a debt does not make the plaintiff a consumer under the WVCCPA. *See, e.g.*, *In re Spurlock*, No. 3:10-cv-1252, 2011 WL 2469830, at *6 (S.D. W. Va. June 17, 2011) ("Although Mrs. Spurlock asserts she has a marital interest in the house, it does not mean she is a consumer for purposes of the loan. As Mrs. Spurlock did not

sign for the loan, she cannot assert a claim as a consumer."); *Fabian*, 2014 WL 1648289, at *6 (finding that because the plaintiffs made no showing of personal liability to the debt, they failed to demonstrate an "alleged[] obligation" to pay it within the meaning of the WVCCPA); *Ballard v. Bank of Am., N.A.*, No. 2:12-cv-2496, 2013 WL 5963068, at *11 (S.D. W. Va. Nov. 7, 2013) ("[T]he option to pay money to retain collateral is not equivalent to a personal obligation to repay a discharged debt.").

Put simply, the plaintiffs have failed to demonstrate a genuine issue of material fact as to whether Mr. McNeely is obligated or allegedly obligated to Nationstar for these loans. Therefore, I **FIND** that Mr. McNeely is not a "consumer" under the WVCCPA and lacks standing to bring Counts I and II of the Amended Complaint. These claims fail as a matter of law.

### 2. Breach of Contract (Count III)

Similarly, because Mr. McNeely was not a party to any loan agreement at issue, the defendants argue that he lacks standing to sue for breach of contract. The first element of a breach of contract claim is the existence of a valid, enforceable contract between the parties. *See Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 730 (S.D. W. Va. 2009). The documents in the record establish that Mr. McNeely did not sign and is not a party to any express contract with Nationstar. (*See* First Loan [Dockets 48-1, 48-2]; Second Loan [Dockets 48-5, 48-6]; *see also* Ex. D, Michael McNeely Dep. [Docket 48-4], at 17:10–13 (testifying that he did not sign any notes)). The plaintiffs have failed to offer any evidence to contradict the record. Accordingly, I **FIND** no genuine issue of material fact regarding the absence of a contractual relationship between Mr. McNeely and Nationstar, and therefore, his breach of contract claim fails as a matter of law.

The defendants' Motion on these matters is **GRANTED**. Thus, Mr. McNeely's claims in this action are **DISMISSED with prejudice**.

### B. Sufficiency of Ms. McNeely's Claims

The defendants next move for summary judgment on Ms. McNeely's claims, arguing that she has failed to present any genuine issues of material fact as to whether Nationstar illegally collected a debt under WVCCPA §§ 46A-2-127 and -128; charged illegal fees under WVCCPA §§ 46A-2-127, -115, and -128; or breached its contract with Ms. McNeely.

#### 1. Illegal Debt Collection (Count I)

WVCCPA § 46A-2-127 prohibits debt collectors from using "any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." W. Va. Code § 46A-2-127. Proscribed conduct includes "[a]ny false representation that the debt collector has in his possession information or something of value for the consumer that is made to solicit or discover information about the consumer." *Id.* § 46A-2-127(b). Section 46A-2-128 provides that "[n]o debt collector may use unfair or unconscionable means to collect or attempt to collect any claim." *Id.* § 46A-2-128.

The plaintiffs' claim for illegal debt collection appears to arise from two events: First, a letter from Nationstar to Ms. McNeely, dated October 4, 2010, conveying information on the terms of her loan modification, and second, Nationstar's conduct in considering Mr. McNeely's September 2012 loan modification request.

*a. October 2010 Letter*

With respect to the October 2010 letter, the plaintiffs claim that it misrepresented the interest rate, the required monthly payments, and the modification term for Ms. McNeely's November 2008 loan modification agreement. (*See* Am. Compl. [Docket 37] ¶ 7). The

9

defendants argue that the letter is not subject to the WVCCPA because it is not an attempt to collect a debt. Furthermore, the defendants explain, the letter simply contained an "inconsequential mistake." (Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem") [Docket 49], at 13). Specifically, the letter correctly identified the terms of the June 2010 loan modification agreement but mistakenly inserted the dates from the November 2008 loan modification agreement. (*Id.*). In the defendants' view, this mistake does not constitute fraudulent, deceptive, or misleading representation. I **FIND** the express language of the letter establishes a genuine issue of material fact as to both of the defendants' arguments.

First, the letter's disclaimer—"This is an attempt to collect a debt and any information obtained may be used for that purpose," (Ex. H, Letter from Nationstar to Lisa McNeely (Oct. 4, 2010) [Docket 48-8])—refutes the defendants' argument that the October 2010 letter "is an informational piece of communication regarding previously modified loan terms and is not an attempt to collect a debt," thereby creating a genuine issue of material fact. (Defs.' Mem. [Docket 49], at 13). Second, the letter, by mistake or not, incorrectly stated the expiration date of the June 2010 loan modification agreement as January 1, 2011, when the actual expiration date was July 1, 2012. As a result, the letter could have led an unsophisticated consumer to believe that in less than three months, her payments would increase by $300 and her interest rate would increase by over two percentage points. Though the defendants contend that Ms. McNeely was not *actually* misled, given that she does not recall reading the October 2010 letter, the question under § 46A-2-127 is not a subjective one. Rather, the statute lists conduct that "is deemed to violate this section" and includes in that list "[a]ny false representation or implication of the character, extent or amount of a claim against a consumer[.]" W. Va. Code § 46A-2-127(d). The October 2010 letter inaccurately stated the duration of the loan modification agreement. It is up

to the factfinder to determine whether, in these circumstances, the letter constitutes a false representation prohibited by the WVCCPA. The defendants' Motion on this matter is **DENIED**.[4]

### b. *September 2012 Loan Modification Request*

The plaintiffs also claim that the defendants engaged in illegal debt collection when considering Mr. McNeely's request for a loan modification. (*See* Am. Compl. [Docket 37] ¶ 8). Specifically, the plaintiffs allege that Nationstar represented to Mr. McNeely that it would consider his loan modification application but then allowed the application to "expire without reviewing or providing an answer." (*Id.* ¶ 12). The defendants argue that because Ms. McNeely had nothing to do with the September 2012 loan modification, this claim must be dismissed.

As I have previously held in this case, the prohibitions set forth in § 46A-2-127 protect consumers against misrepresentations made in attempts to collect consumer information, as well as misrepresentations made in attempts to collect a debt. (Mem. Op. & Order [Docket 23], at 6 ("I find that § 46A-2-127 is not limited to debt collection but also extends to information collection.")). Here, however, the plaintiffs have not offered any evidence showing that Nationstar made misrepresentations to Ms. McNeely during her ex-husband's attempt at loan modification. In fact, during her deposition, Ms. McNeely confirmed that she did not speak with Nationstar about the matter or have any involvement in the September 2012 loan modification process:

> Q: Tell me what you know about [your ex-husband's attempt to modify the loan in 2012].
>
> A: All I know is through conversation with him, he just said he was trying to modify the loan, and as far as any details beyond that, I have no information about that.

---

[4] However, even if the jury resolves this claim in Ms. McNeely's favor, she is only eligible for civil penalties under § 46A-5-101(1) and attorney's fees under § 46A-5-104 because, as explained below, she has failed to prove actual damages resulting from Nationstar's alleged illegal debt collection. *See supra* III.C.

> Q: Did you work with him at all to attempt to modify the loan?
>
> A: No.
>
> Q: Did you do anything to attempt to modify the loan in 2012?
>
> A: No.
>
> Q: So anything that was done in this time period would have been done by your ex-husband without you.
>
> A: Yes. That's correct.

(Ex. C, Lisa McNeely Dep. [Docket 48-3], at 35:5–24). Therefore, the defendants' Motion on this matter is **GRANTED**, and Ms. McNeely's claim for illegal debt collection based on the September 2012 loan modification process is **DISMISSED with prejudice**.

### 2. Illegal Fees (Count II)

Section 46A-2-127(g) prohibits debt collectors from making "[a]ny representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation." W. Va. Code § 47A-2-127(g). Sections 46A-2-115 and -128 supplement this provision, stating, respectively, that the agreement between the parties "may not provide for charges as a result of default by the consumer other than those authorized by this chapter," *id.* § 46A-2-115(a), and that "[t]he collection of or the attempt to collect any . . . fee or expense incidental to the principal obligation" is prohibited unless "expressly authorized by the agreement creating the obligation and by statute," *id.* § 46A-2-128(d). Fees allowed under the WVCCPA include: "reasonable expenses including costs and fees authorized by statute incurred in realizing on a security interest"; "[p]ublication costs paid to the publisher of the notice"; appraisal fees for foreclosure; "title check and lienholder

notification fee not to exceed two hundred dollars"; and certified mailing costs. *Id.* §§ 46A-2-115(a)–(b).

The plaintiffs identify twenty-seven fees and one "legal" fee charged to Ms. McNeely's accounts that, in their view, are illegal. (Am. Compl. [Docket 37] ¶¶ 14–16). The defendants argue that the plaintiffs have offered no evidence that these fees are illegal. With respect to the twenty-seven fees assessed to Ms. McNeely's account, I agree with the defendants. The plaintiffs emphasize that these fees have been labeled with the vague description "corporate advances" and, from this description alone, ask the court to infer that the fees were illegal. I cannot reach this speculative conclusion absent concrete evidence that the fees, regardless of their label in the transaction history, were assessed for purposes other than those permitted under § 46A-2-115. *Dash*, 731 F.3d at 311 (holding that the nonmoving party must rely on more than "mere speculation" to survive summary judgment). The plaintiffs have failed to provide such evidence. Therefore, the defendants' Motion regarding these fees is **GRANTED**.

With respect to the legal fee, on the other hand, I **FIND** that there is a genuine issue of material fact as to whether it is an illegal attorney's fee under § 46A-2-127(g). The plaintiffs have provided evidence that Nationstar charged an additional legal expense to the balance of Ms. McNeely's February 16, 2010 loan modification in the amount of $1,331.36. (Am. Compl. [Docket 37] ¶ 15; *see also* Ex. E, Loan Data Sheet [Docket 50-5] (itemizing the fees associated with the February 17, 2010 loan modification)). The defendants' argue that "there is absolutely no evidence that these 'legal' fees were attorney's fees and not other authorized fees, such as title check or junior lienholder's notification fees, that are always performed when a loan is referred to foreclosure." (Defs.' Mem. [Docket 49], at 18). But Ms. McNeely's loans had not been referred to foreclosure at this time. Therefore, the legal fees could not be associated with

foreclosure proceedings. Similarly, the legal fees could not be fees associated with the loan modification, given that modification fees are separately listed on the itemized statement. (Ex. E, Loan Data Sheet [Docket 50-5]). Drawing all permissible inferences in favor of the plaintiffs, I conclude that a reasonable juror could qualify the "legal" fees as attorney's fees. Indeed, the defendants ultimately agree that the plaintiffs' claim as to the legal expenses "survive[s] the present motion for summary judgment." (Defs.' Reply in Supp. of Mot. for Summ. J. [Docket 53], at 9). For these reasons, the defendants' Motion regarding the legal fees is **DENIED**.[5]

### 3. Breach of Contract (Count III)

In their last cause of action, the plaintiffs claim that Nationstar's assessment of an illegal attorney's fee is in breach of the First Loan's Deed of Trust. The Deed of Trust states that any requirement under the security agreement seeking payment of attorney's fees "shall be void." (Ex. B, First Loan Deed of Trust [Docket 48-2] ¶ 25). The plaintiffs allege that by charging the "legal" expense described above, Nationstar breached the Deed of Trust. To survive summary judgment on a breach of contract claim, the plaintiff must provide concrete evidence on the following elements: (1) the existence of a valid, enforceable contract; (2) the plaintiff's performance under the contract; (3) the defendant's breach of its duties or obligations under the contract; and (4) resulting injury to the plaintiff. *Executive Risk Indem., Inc.*, 681 F. Supp. 2d at 714. The defendants argue that the plaintiffs have not offered concrete evidence as to the third or fourth elements.

---

[5] During her deposition, Ms. McNeely was asked whether she "contend[s] that any fees were illegally charged" to her, and she responded "no." (Ex. C, Lisa McNeely Dep. [Docket 48-3], at 26:4–9). The defendants argue that this testimony amounts to a concession of Ms. McNeely's claim for illegal fees. Their argument is erroneous. Ms. McNeely's claim for illegal fees is adequately asserted in the Amended Complaint, defended in the response briefing, and supported by the evidence. I see no indication that she wishes to abandon it aside from the deposition testimony, which seems to have resulted from strategic questioning as opposed to an understanding of the law. Indeed, even the most sophisticated consumer could not be expected to accurately answer questions about the legality of fees under the complex provisions of the WVCCPA. Therefore, I do not consider the testimony dispositive, and it should be weighed by the factfinder next to the other evidence presented by the parties at trial.

As explained in the above, a reasonable juror could conclude, based on the transaction history and itemized loan modification statement, that the "legal" fee in the amount of $1,331.36 was an attorney's fee and, consequently, in breach of the Deed of Trust. Furthermore, a reasonable juror could conclude that Ms. McNeely paid the legal fee, thereby causing her damages in an amount up to $1,331.36. (*See* Ex. G, Declaration of Fay Janati, Ex. 1 [Docket 48-7] (showing payments to an escrow account), *but see* Ex. C, Lisa McNeely Dep. [Docket 48-3], at 24:16–24 ("Q: [C]an you unequivocally say that you paid any of the fees? A: No.")). Therefore, the defendants' Motion with respect to the breach of contract claim is **DENIED**.

### C. Existence of Actual Damages

Next, the defendants move for summary judgment on the plaintiffs' claim for actual damages. The WVCCPA allows a consumer to recover "actual damages" from a creditor who has violated the Act. W. Va. Code § 46A-5-101(1). With respect to Ms. McNeely's claim of illegal debt collection (Count I), I agree that she has failed to establish actual damages. There is no demonstrated monetary or economic loss as a result of the "annoyance, inconvenience, and fear of loss of home" allegedly produced by Nationstar's October 2010 letter. Furthermore, Ms. McNeely has not put forth any evidence that her credit report was "tarnished" by Nationstar's conduct and simply states that "the inability to make payments and not making payments tarnishes anybody's credit report." (*See* Ex. C, Lisa McNeely Dep. [Docket 48-3], at 30:1–9). Therefore, if Ms. McNeely succeeds on this claim, her damages are limited to civil penalties and attorney's fees as determined by the court.

However, the plaintiffs have created a genuine issue of material fact as to whether actual damages resulted from Nationstar's alleged assessment of an illegal attorney's fee (Count II). Though Ms. McNeely does not know whether she paid the fee at issue, the transaction history

indicates that when she was not in default, Ms. McNeely made various payments over the years with some portions going towards escrow. (*See generally* Ex. G, Declaration of Fay Janati, Ex. 1 [Docket 48-7] (Detailed Transaction History)). According to the Deed of Trust, fees and assessments required by the lender are "escrow items." (First Loan Deed of Trust [Docket 48-2] ¶ 3). Therefore, viewing the evidence in the light most favorable to the plaintiffs, a reasonable juror could find that Ms. McNeely paid an attorney fee in violation of the WVCCPA, which would entitle her to actual damages equal to the amount paid, if any. *See* W. Va. Code § 46A-5-101(3) ("A consumer is not obligated to pay a charge in excess of that allowed by this chapter, and if he has paid an excess charge he has a right to a refund."). Such a finding would also create actual damages for Nationstar's alleged breach of the Deed of Trust (Count III), which prohibits charging attorney's fees to the borrower.[6]

Therefore, the defendants' Motion on this point is **GRANTED in part** and **DENIED in part**.

### D. Recoupment

Finally, the defendants argue that under West Virginia law, they may recoup any damages awarded to the plaintiffs in the amount still owed on the First and Second Loans. The doctrine of recoupment gives a defendant in a civil action the right to reduce or eliminate the plaintiff's claim, "either because the plaintiff has not complied with some cross-obligation of the contract or because the plaintiff has violated some legal duty in the making or performance of that contract." *Wheeler & Clevenger Oil Co. v. Rust*, No. 2:05-0933, 2006 WL 2099288, at *4

---

[6] Because Ms. McNeely has not suffered physical harm as a result of Nationstar's conduct, (*see* Ex. C, Lisa McNeely Dep. [Docket 48-3], at 29:7–21), she cannot recover damages for her alleged "annoyance, inconvenience, and fear of loss of home" unless the jury first finds that she actually paid some portion of this improper legal fee, thereby incurring economic loss. *See Allen v. Smith*, 368 S.E.2d 924, 927 (W. Va. 1988) ("Except in extraordinary circumstances, such as a breach of a promise to marry, compensatory damages for emotional distress without an accompanying physical or economic loss cannot be awarded in a contract action.").

(S.D. W. Va. July 27, 2006) (citing 20 Am. Jur. 2d *Counterclaim, Recoupment, Etc.* § 5 (2015)). While a defendant may not seek affirmative relief under a theory of recoupment, he may assert his own claim in an amount up to that of the plaintiff's claim, so long as his claim arises out of the same transaction as that of the plaintiff. *Id.*

Here, Ms. McNeely is obligated to pay the outstanding loan amounts due under the First and Second Loans. The defendants allege that she is in default on these loans, and as a result, they are entitled to recoupment. I agree that the doctrine of recoupment applies here. The defendants' claim for the owed debt arises out of the same loan agreements as the plaintiffs' claims. Regardless of whether the defendants violated the WVCCPA as alleged by the plaintiffs, they have a right to the debt owed by Ms. McNeely. *See* W. Va. Code § 46A-5-101(5) ("Except as otherwise provided, a violation of this chapter does not impair rights on a debt."). Accordingly, the defendants may pursue their breach of contract allegations under a recoupment defense. The amount of damages reduced by recoupment is left to the factfinder. I note, however, that as of February 19, 2015, Ms. McNeely owes a total of $208,005.25 on her First Loan and $51,914.19 on her Second Loan. (Ex. G, Declaration of Fay Janati [Docket 48-7] ¶ 13). She is 689 days delinquent on the former and 720 days delinquent on the latter. (*Id.* at Exs. 10 & 11). Thus, it is nearly certain that Nationstar's right to recoupment will negate any damage award to Ms. McNeely in its entirety and leave a large balance outstanding.

## IV. Conclusion

The defendants' Motion for Summary Judgment [Docket 48] is **GRANTED in part** and **DENIED in part**. As a result, the following claims are **DISMISSED with prejudice**: All claims brought by Michael McNeely; Lisa McNeely's claim for illegal debt collection based on the September 2012 loan modification process; Lisa McNeely's claim for illegal fees based on the

twenty-seven assessments identified in the Amended Complaint; and Lisa McNeely's claim for actual damages arising from Count I of the Amended Complaint.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: July 24, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE